23CA0642 Peo v Price 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0642
City and County of Denver District Court No. 22CR2731
Honorable Eric M. Johnson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jamelle Price,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Bernard* and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Chloe Sovinee-Dyroff, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Defendant, Jamelle Price, appeals the judgment of conviction entered after a jury found him guilty of two counts of possession of a weapon by a previous offender (POWPO) and driving after revocation prohibited (DARP). We affirm.

## I. Background

¶ 2 While on patrol shortly after midnight, Officer Jacob Wolford and Officer Ryan Salg ran a license plate check on a car that Price was driving. The license plate came back as expired and didn't match the car Price was driving, so the officers initiated a traffic stop.

¶ 3 Officer Wolford asked Price for the car's registration, to which Price replied that he had "just bought" the car. Officer Wolford informed Price that the license plates were registered to a car other than the one Price was driving. Price offered to get the title to the car out of a backpack he had in the back seat, but Officer Wolford declined and asked Price for his ID.

¶ 4 Price gave Officer Wolford his state ID card. Officer Salg also obtained identification from a passenger in the front seat. The officers ran both names through their criminal history database and learned that Price's driver's license had been revoked and that he

was a habitual traffic offender (HTO).  The passenger had two active warrants for his arrest.  Shortly after the officers initiated the stop, a third officer — Officer Callee Heitz — arrived on scene to assist.

¶ 5       Officer Wolford and Officer Salg returned to the car and arrested Price.[1]  Before placing Price in a patrol car, Officer Wolford searched him and found six nine millimeter bullets in his pocket.

¶ 6       After confirming with Officer Wolford that Price was an HTO, Officer Heitz and Officer Salg began searching Price's car and discovered a nine millimeter gun lodged between the front passenger seat and the center console.  The officers searched a tan backpack and a black bag in the backseat and found the title to the car in the tan backpack.  They also found a box with nine millimeter bullets in the backpack.  Officer Heitz also searched the black bag and found a .22 caliber gun.

¶ 7       The prosecution charged Price with two counts of POWPO and later added one count of DARP.

¶ 8       Before trial, defense counsel filed a motion to suppress any evidence obtained from the officers' search of Price's car.  At the

---

[1] After the officers arrested Price, they also arrested the passenger on the outstanding warrants.

suppression hearing, defense counsel argued in relevant part that the officers' inventory search was improper because the officers didn't comply with the police department's established procedures. The district court concluded that the officers had conducted a proper inventory search and denied Price's motion.

¶ 9     A jury found Price guilty of all three charges. Price appeals his judgment of conviction, arguing that the court erred by denying his motion to suppress. He further argues that the POWPO jury instructions contained the wrong unit of prosecution, which resulted in a less than unanimous jury verdict. And he argues that the evidence wasn't sufficient for his POWPO and DARP convictions. For the reasons discussed below, we disagree with each of his contentions.

## II.    Law Enforcement Officers' Impoundment and Subsequent Inventory Search of Price's Car Were Lawful

### A.    Additional Background

¶ 10    At the suppression hearing, defense counsel introduced into evidence the part of the operations manual for the Denver Police Department (DPD) that detailed its vehicle impoundment procedures. The manual gave officers discretion to "park and lock"

3

a vehicle if the driver was "arrested and impounding the vehicle is not required or permitted by policy, or it is determined to be necessary based upon the circumstances." The manual listed HTO violations among the mandatory reasons for impounding a vehicle. According to the manual, officers' inventory searches of impounded vehicles were required to follow established policies, including documenting in writing whether property was found in a vehicle, removing valuable items from the vehicle for storage at the police department, and securing any items of "minimal" value in the vehicle, if possible.

¶ 11    Defense counsel argued that the inventory search was unlawful because instead of documenting everything that was inside the car as required by DPD policy, officers only documented items of evidentiary value.

¶ 12    In support of its conclusion that the officers' inventory search was lawful, the court found that

(1)    the officers were in a place they were legally allowed to be;

(2)    the car wasn't parked in a proper parking spot and "could not be left where it was";

(3)    there was no one available to drive the car away from the scene when the officers arrested Price;

(4)    DPD's policy specifically mandated impounding a vehicle when a driver had an HTO; and

(5)    the officers' failure to follow their documentation policy "d[id] not undermine the propriety of the constitutionality" of their ability to search Price's vehicle.

## B.    Applicable Legal Principles

### 1.    Inventory Search and the Community Caretaking Exception

¶ 13    Under the Fourth Amendment, a search conducted without a warrant is presumptively unreasonable unless the search falls within an exception to the warrant requirement. *People v. Brown*, 2016 COA 150, ¶ 9 (*Brown I*), *aff'd*, 2018 CO 27 (*Brown II*). It's the prosecution's burden to establish an exception. *Id.*

¶ 14    One such exception is a vehicle inventory search conducted pursuant to law enforcement's community caretaking responsibilities. *Id.* at ¶ 10. An inventory search doesn't seek to obtain evidence but rather is "designed to protect the owner's property while it is in police custody, to insure against claims concerning lost or damaged property, and to protect the police from

any danger posed by the contents of the vehicle." *Id.* (citation omitted).

¶ 15 Officers can conduct a warrantless inventory search of a vehicle if the totality of the circumstances demonstrate that the officers, guided by standardized procedures, both impounded the vehicle and subsequently conducted an inventory search for valid community caretaking purposes. *People v. Thomas*, 2021 COA 23, ¶¶ 13-16. "[T]he decision to impound a vehicle and the ensuing inventory search are separate processes, both of which 'must meet the strictures of the Fourth Amendment.'" *Brown I*, ¶ 11 (quoting *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996)).

¶ 16 Whether a vehicle was properly impounded is thus the threshold inquiry to a court's ultimate determination of whether an inventory search was reasonable. *Id.* After a vehicle is impounded, an inventory search conducted in accordance with an established, standardized procedure is generally considered reasonable in the absence of evidence that the officers conducted the search in bad faith or solely for investigative purposes. *People v. Vaughn*, 2014 CO 71, ¶ 14. But strict procedural compliance doesn't necessarily render an inventory search reasonable under the Fourth

Amendment. *Brown I*, ¶ 20. "Rather, the ultimate issue remains whether the . . . inventory [search] serve[d] an administrative community caretaking function." *Brown II*, ¶ 12. In making that determination, courts consider whether the officers' conduct in searching a vehicle was objectively reasonable — that is, "whether a reasonable officer in the particular circumstances of the case would have conducted such a search absent an illegitimate motive." *People v. Gee*, 33 P.3d 1252, 1255 (Colo. App. 2001).

### 2. Standard of Review

¶ 17 A district court's suppression ruling presents a mixed question of law and fact. *People v. Tomaske*, 2019 CO 35, ¶ 7. In reviewing a court's suppression ruling, we defer to its findings of historical fact that are supported by competent evidence in the record, but we assess the legal effect of those historical facts de novo. *People v. Stock*, 2017 CO 80, ¶ 13.

¶ 18 The warrantless search of a defendant's car implicates the defendant's Fourth Amendment rights. *See Brown I*, ¶ 9. We review preserved errors of constitutional dimension under the constitutional harmless error standard. *Hagos v. People*, 2012 CO 63, ¶ 11. Such errors, if found, require reversal unless the

7

reviewing court is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Conversely, when an issue — constitutional or nonconstitutional — is unpreserved, we review for plain error, meaning the error must be obvious and substantial. *Id.* at ¶ 14. And "[w]e reverse under plain error review only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

### C.    Analysis

¶ 19    Price argues that because the prosecution failed to show that the officers' choice to impound his car was proper, the officers' subsequent inventory search was improper, and therefore the court erred by not suppressing the evidence the officers obtained from the search. Specifically, he contends that the time and location of his arrest, his proof of ownership of the car, and the availability of others to take the car don't support the impoundment. However, Price didn't raise these arguments in his motion to suppress or at the suppression hearing. Rather, Price's arguments at the suppression hearing focused on the propriety of the inventory

8

search — the secondary inquiry in the district court's consideration of whether the search of his car was lawful. Thus, we review the court's determination that the impoundment was lawful for plain error. *See id.*; *see also People v. Rogers*, 2012 COA 192, ¶ 24 ("An issue is unpreserved for review when an objection or request was made to the trial court, but on different grounds than those raised on appeal."). We review the court's determination that the subsequent inventory search was lawful for constitutional harmless error.

¶ 20    Price argues that his car was parked on the private property of a closed restaurant, so it "wasn't impeding traffic, causing a public safety hazard, or parked in an unsafe location." He acknowledges that the car wasn't parked in a designated parking spot within the private parking lot but argues that the officers didn't rely on that circumstance as a reason for impoundment. Rather, he argues that the officers impounded his car merely because of DPD's policy on HTOs, which, standing alone, is insufficient to support the impoundment.

¶ 21    While the officers relied on DPD's policy requiring impoundment for HTOs, the evidence produced by the prosecution

at the suppression hearing supports the court's conclusion that the decision to impound Price's car also served a community caretaking function that was justified by the circumstances. *See Brown II*, ¶ 12-13.

¶ 22 As Price acknowledges, his car wasn't in a designated parking space despite being in a private parking lot. And the prosecution presented evidence that Price's passenger, having also been arrested, was unavailable to move the car, and Price's relatives didn't arrive until after the officers had already searched the car. Moreover, the officers testified that they determined, consistent with DPD policy, that it was appropriate to leave a number of items of "minimal" value — such as alcohol bottles and articles of clothing — in the car, which was parked in a high-crime area that frequently experienced car thefts and car vandalism. *See id.* at ¶ 8.

¶ 23 Price argues that, despite telling the officers that the title to his car was in his backpack, "officers failed to take any steps, prior to the inventory search, to assess ownership of the car" before searching it. The record doesn't support this assertion. Officer Wolford testified that he attempted to verify Price's statements that he owned the car by running the car's vehicle identification number

(VIN) through the computer system in his squad car and asking Price for other car-related documents containing the VIN, such as the car's registration or an insurance card, that might be located in the glove box. And, in any event, to the extent he argues that his ownership of the car sufficiently established that the officers acted unreasonably by impounding it, that argument is conclusory, and we decline to consider it further. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a perfunctory or conclusory manner).

¶ 24 We likewise reject Price's assertion that the officers should have taken additional steps to determine whether anyone else, such as one of his relatives who arrived shortly after his arrest and before his car was towed, could have driven his car away from the scene. The officers' reasons for impounding the car — Price's arrest, his passenger's arrest, the time of day, and the neighborhood conditions — were objectively reasonable. Whether the officers *could* have taken different actions before impounding the car isn't controlling. *People v. Camarigg*, 2017 COA 115M, ¶ 20 ("[W]hether the officers had other options besides impounding [the vehicle] is not controlling; the question is whether the decision was objectively

reasonable."); *see also Illinois v. Lafayette*, 462 U.S. 640, 647 (1983) ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."). Thus, the record supports the court's conclusion that the officers' impoundment of Price's car was a reasonable exercise of a community caretaking function under the totality of the circumstances.

¶ 25     Nevertheless, Price argues that the inventory search was improper because the officers didn't comply with DPD's policies, "which suggests that the inventory search was [a] pretext for a criminal investigation." But this argument ignores that inventory searches may still be reasonable even when officers fail to inventory all the items in a car. *See Colorado v. Bertine*, 479 U.S. 367, 369-70 (1987) (upholding an inventory search of a vehicle despite the officer's failure to create a detailed inventory of all the contents of the vehicle). Indeed, federal and state courts have consistently upheld inventory searches despite officers failing to create a complete inventory as required by standardized inventorying procedures. *See, e.g., United States v. Veale*, 734 F. Supp. 3d 1169, 1179-80 (D.N.M. 2024) (collecting federal cases); *Stamps v.*

12

*Commonwealth*, 911 S.E.2d 435, 442 n.6 (Va. Ct. App. 2025) (collecting federal and state cases). Therefore, the procedural departures that Price relies on don't, in and of themselves, demonstrate that the inventory search of his car was pretextual, and he presents no other arguments supporting a conclusion that the officers conducted the inventory search for any reason other than to comply with DPD's policies.

¶ 26 Because we have concluded that the officers' impoundment and subsequent inventory search of Price's car were both lawful, we need not consider Price's arguments that no other exception applied to the officers' warrantless search of his vehicle. *See Carmichael v. People*, 206 P.3d 800, 810 (Colo. 2009) (declining to address the defendant's other arguments when affirming the district court's decision on another basis), *overruled on other grounds by*, *Lafler v. Cooper*, 566 U.S. 156 (2012), *and Missouri v. Frye*, 566 U.S. 134 (2012). In sum, we discern no basis for reversal.

## III. The Court Didn't Plainly Err in Instructing the Jury on the POWPO Counts

### A. Additional Background

¶ 27 The complaint identified different felony convictions as the basis for each POWPO charge. At trial, Price stipulated to the two prior felony convictions identified in the complaint.

¶ 28 The instructions provided to the jury reflected the different felonies on which each POWPO charge was purportedly based. Thus, one of the POWPO jury instructions listed the elements as follows:

1. That the Defendant,

2. In the State of Colorado, at or about the date and place charged,

3. Subsequent to being convicted of Assault in the Second Degree,

4. Knowingly,

5. Possessed, used, or carried upon his person a firearm.

The second POWPO jury instruction listed "[s]ubsequent to being convicted of Menacing" as the third element. Defense counsel didn't object to the jury instructions or ask the court to give a special unanimity instruction.

14

## B.     Applicable Legal Principles

¶ 29     The General Assembly establishes and defines criminal offenses by prescribing the allowable unit of prosecution. *Woellhaf v. People*, 105 P.3d 209, 215 (Colo. 2005). "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." *Id.* In constructing the POWPO statute, the General Assembly established that a convicted felon commits the crime of POWPO when he "knowingly possesses . . . a firearm." § 18-12-108(1), C.R.S. 2025. Thus, the proper unit of prosecution for the crime of POWPO is the number of guns that a defendant knowingly possessed. *See People v. Montez*, 280 P.3d 9, 14 (Colo. App. 2010), *rev'd on other grounds*, 2012 CO 6.

¶ 30     Under section 16-10-108, C.R.S. 2025, a jury verdict must be unanimous. "Unanimity means only that each juror agrees that each element of the crime charged has been proved to that juror's satisfaction beyond a reasonable doubt." *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008). A special unanimity instruction is required when "there is evidence of multiple acts, any one of which would constitute the offense charged." *People v.*

15

*Allman*, 2012 COA 212, ¶ 40 (quoting *Melina v. People*, 161 P.3d 635, 636 (Colo. 2007)). But a special unanimity instruction isn't required if the crime with which the defendant is charged encompasses incidents occurring in a single transaction. *Id.*

¶ 31    We consider the instructions as a whole to determine whether the court properly advised the jury as to the law. *Id.* We review de novo whether a jury instruction correctly stated the law, *People v. Archuleta*, 2017 COA 9, ¶ 42, and whether the court should have given the jury a special unanimity instruction, *Allman*, ¶ 39. However, we review a court's decision to give a certain jury instruction for an abuse of discretion. *People v. McClelland*, 2015 COA 1, ¶ 14.

¶ 32    We review unpreserved claims of instructional error for plain error. *Hagos*, ¶ 14.

## C.    Analysis

¶ 33    Price argues that the prosecution used the wrong unit of prosecution for the POWPO charges because the charges were based on the number of his prior felonies rather than the number of guns he allegedly possessed. He argues that as a result, his

16

convictions "might not have been unanimous" and therefore cannot stand.  We disagree.

¶ 34    Despite the two POWPO jury instructions not identifying the specific gun that Price may have possessed, the court gave a general unanimity instruction, which stated that

> [t]he verdicts must represent the considered judgment of each juror, and it [sic] must be unanimous.  In other words, all of you must agree to all parts of it.  This requirement also applies to any determinations that you make in response to verdict questions which you conclude should be answered.

¶ 35    As discussed below in Part V, the prosecution's evidence was sufficient to support a jury determination beyond a reasonable doubt that Price possessed both guns.  And because the jury could so find and was instructed that it must unanimously agree that Price possessed one of those guns for each of his prior felonies, we can't conclude that the court's error, if any, in not giving the jury a special unanimity instruction "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *Id.* (citation omitted); *see also People v. Boykins*, 140 P.3d 87, 95 (Colo. App. 2005) (the defendant carries the burden to establish that an error is both

17

obvious and substantial). Furthermore, as the People note, the court merged Price's POWPO convictions during sentencing, so he was only sentenced for one POWPO conviction. *See People v. DeWitt*, 275 P.3d 728, 736 (Colo. App. 2011) (merging two POWPO convictions to avoid a double jeopardy violation), *abrogated on other grounds by, People v. Carbajal*, 2014 CO 60, *as recognized in, People v. Hasadinratana*, 2021 COA 66, ¶ 3.

¶ 36    Thus, we discern no reversible error based on the jury instructions.

### IV.    The Evidence Was Sufficient to Support Price's Convictions

#### A.    Additional Background

¶ 37    Officers Heitz, Salg, and Wolford each testified at trial. Officers Salg and Heitz told the jury about the location and recovery of the nine millimeter gun, which was lodged between the center console and the front passenger seat. Specifically, Officer Heitz said that the nine millimeter gun was in a "weird position" and could only be retrieved from behind the front passenger seat. And based on the location, Officer Heitz said that it seemed as though "somebody in the driver's seat would have reached back with their right hand and stuffed it down deep."

18

¶ 38    Officer Heitz also talked about finding the .22 caliber gun. And Officer Salg confirmed that Officer Heitz found the .22 caliber gun in a black bag located in the middle of the backseat. Officer Wolford recounted searching Price after arresting him and finding six nine millimeter bullets in Price's pocket. And he and Officer Salg each testified that Price's tan backpack contained a box of nine millimeter bullets.

¶ 39    The court admitted into evidence, among other things, the officers' body camera video from the arrest and search, pictures of the two guns and bullets, the two guns, and Price's Colorado Division of Motor Vehicles (DMV) driving history.

### B.    Applicable Legal Principles

#### 1.    POWPO

¶ 40    "A person commits the crime of [POWPO] if the person knowingly possesses, uses, or carries upon his . . . person a firearm . . . ."[2] § 18-12-108(1). The supreme court has defined possession as "the actual or physical control of a firearm." *People v. Garcia*, 595 P.2d 228, 231 (Colo. 1979). But "a defendant need not

---

[2] The definition of "firearm" includes a handgun. *See* § 18-1-901(3)(h), C.R.S. 2025.

19

have had exclusive control of the firearm to be found guilty of possessing it." *People v. Allgier*, 2018 COA 122, ¶ 66.

¶ 41 As the fact finder, the jury determines whether a gun was within a defendant's actual or physical control by considering factors including the defendant's proximity to the gun and the defendant's awareness of the presence of the gun. *Garcia*, 595 P.2d at 231 n.4. Furthermore, "the jury must find, not mere possession, but that the defendant 'knowingly' possessed the weapon and that he understood that the object possessed was a weapon." *People v. Tenorio*, 590 P.2d 952, 957 (Colo. 1979); *see also* § 18-1-501(6), C.R.S. 2025 ("A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.").

## 2. DARP

¶ 42 Section 42-2-206(1)(a)(I), C.R.S. 2025, prohibits a person from operating any motor vehicle while their driver's license remains revoked. A person drives under restraint when they "drive[] a motor vehicle . . . upon any highway . . . with *knowledge* that [their] license or privilege to drive . . . is under restraint for any reason

other than [a] conviction [related to driving under the influence].”
§ 42-2-138(1)(a), C.R.S. 2025 (emphasis added); *see People v. Boulden*, 2016 COA 109, ¶ 7. Thus, “knowledge” is an essential element for this crime. *Boulden*, ¶ 8.

### 3. Sufficiency of the Evidence

¶ 43 We review de novo sufficiency of the evidence claims. *McCoy v. People*, 2019 CO 44, ¶ 63. We consider “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” *Id.* (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)). However, it’s the fact finder’s role to determine the credibility of witnesses, the probative value of evidence, and the inferences and conclusions to be drawn therefrom, and to resolve any evidentiary disputes. *People v. Arzabala*, 2012 COA 99, ¶ 13. As a reviewing court, we don’t sit as a thirteenth juror. *People v. Robb*, 215 P.3d 1253, 1257 (Colo. App. 2009).

## C. Analysis

### 1. POWPO

¶ 44　Price argues that the prosecution didn't present sufficient evidence that he knowingly possessed either gun because, among other things, he'd only owned the car for a few hours and didn't have exclusive possession of it.[3]  In support, he relies on *People v. McBride*, 2020 COA 111, ¶¶ 58, 66, *rev'd on other grounds*, 2022 CO 30, in which a division of this court reversed a defendant's POWPO conviction because it concluded the defendant didn't knowingly possess a gun.

¶ 45　In reaching this conclusion, the *McBride* division considered whether the prosecution offered "something more" than the defendant's mere proximity to the gun, such as the defendant's ownership or exclusive possession of the car in which officers found

---

[3] In his opening brief, Price quotes language from *People v. McBride*, 2020 COA 111, ¶ 58, *rev'd on other grounds*, 2022 CO 30, to argue, in part, that there was insufficient evidence for the POWPO convictions because the prosecution didn't prove he owned the car. But two sentences later, he acknowledges that he "repeatedly told officers that he just bought the car a few hours before they pulled him over."  Price doesn't dispute that the weapons found in his vehicle were firearms.  *See People v. Tenorio*, 590 P.2d 952, 957 (Colo. 1979).

22

the gun.  *Id.* at ¶ 58.  But, at least with respect to whether

*ownership* of a car provides the "something more" necessary to

demonstrate knowledge of possession of a gun located in it, Price's

reliance on *McBride* is misplaced because he acknowledges that he

repeatedly told officers that he had just bought the car and had the

title in his backpack.

¶ 46     Nevertheless, Price argues that the evidence was insufficient to

prove he had exclusive possession of the car because (1) he had a

passenger in his car and (2) he had recently bought the car.  And he

argues that because he only recently bought the car, it's plausible

that the nine millimeter gun "could've been inadvertently left there

by the seller."

¶ 47     But "knowledge of the presence of [a gun] may ordinarily be

inferred from the exercise of control over the vehicle in which it is

concealed."  *United States v. Richardson*, 848 F.2d 509, 513 (5th

Cir. 1988).  Although Price wasn't the sole occupant of the car, he

was the owner and driver.  And the prosecution produced evidence

that officers found the car's title in a tan backpack, along with other

items that linked Price to that backpack.  The prosecution also

produced evidence that the nine millimeter gun seemed as though it

had been wedged into the place where officers found it from the driver's seat; nine millimeter bullets were found in the pants pockets Price was wearing and in the tan backpack; and the .22 caliber gun was in the back seat, within reaching distance of the driver's seat. Thus, the prosecution offered "something more" than Price's mere proximity to both guns from which the jury could infer his knowing possession. *See McBride,* ¶ 58. It was the jury's role to determine any inferences and conclusions to be drawn from the evidence, *Arzabala,* ¶ 13, and we may not substitute our judgment for that of the jury or reweigh the evidence, *People v. Sharp,* 104 P.3d 252, 256 (Colo. App. 2004).

¶ 48 Thus, we conclude that the evidence presented, viewed as a whole and in the light most favorable to the prosecution, was sufficient to support each of Price's POWPO convictions. *See McCoy,* ¶ 63.

## 2. DARP

¶ 49 Price argues that the prosecution failed to present sufficient evidence that he knew his license was revoked when officers pulled him over. We disagree.

24

¶ 50    Prices relies on *Boulden*, ¶ 16, to support his argument that the DMV record that the prosecution offered into evidence didn't establish that he knew his license had been revoked.  The division in *Boulden* concluded that evidence that the DMV had mailed one notice of suspension to the defendant, in which the defendant's driving record indicated that his license had been suspended approximately one year earlier[4] and not reinstated, was insufficient to demonstrate that the defendant knew his license was suspended. *Id.*  But the DMV record of Price's driving history is starkly different from that of the defendant in *Boulden*.

¶ 51    The first page of Price's DMV driving history says that Price's license was revoked because he was an HTO.  On that same page, the "credential history" says that the last time Price had a driver's license was in 2009.  Furthermore, the "proof of service" portion of Price's driving record shows that between 2011 and 2015, he was

---

[4] The opinion in *People v. Boulden*, 2016 COA 109, is silent as to when the defendant in that case was charged.  But the appeal arose from a 2014 district court case.  Thus, we can deduce that no more than one year elapsed between when the defendant's license was suspended in 2013 and when the defendant was charged.

notified fourteen times — either via mail or in person by law enforcement officers — that his driving privilege had been revoked.

¶ 52    Thus, viewing Price's DMV history as a whole and in the light most favorable to the prosecution, we conclude that the evidence was substantial and sufficient to support Price's DARP conviction. *See McCoy*, ¶ 63.

V.    Disposition

¶ 53    The judgment is affirmed.

JUDGE BERNARD and JUDGE TAUBMAN concur.